[Crim. No. 1323.   Fourth Dist.   Nov. 15, 1957.]

THE PEOPLE, Respondent, v. ALVIN FRANCIS URBAN, Appellant.

William Bruner, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged in one count of an information with obtaining money ($800), property of the complaining witness, Alice (Skeetz) Herrell, on September 20, 1956, by false and fraudulent representations and pre-

tenses, in violation of section 532 of the Penal Code. In a second count it was charged that on October 9th, 1956, he took her personal property valued at about $580, in violation of section 484 of the Penal Code. A third count charges, and he admitted, he had been previously convicted of the crime of assault with intent to rob, and served a term of imprisonment therefor in the Oregon State Prison. A jury trial resulted in a conviction on count one and guilty of petit theft, an offense included in count two. Defendant appealed from the judgment and order denying a new trial.

It appears that the complaining witness was a waitress and was divorced in 1950. She had two children. Defendant, a cook, was divorced in 1946. They met about September 16, 1956, and within a few days defendant asked her to marry him. The following evening he suggested they go to Mexico to get married. He assured her of the legality of a Mexican marriage. En route they stopped at some office in Tijuana, a paper was signed, they kissed, and were told they were married. They remained in Mexico that night. On September 19, en route to her home in San Diego, the question of money arose. Apparently defendant had knowledge of a bank account the complaining witness had in one of the branch banks. Defendant told her he had about $900 in a bank in San Diego and suggested that the complaining witness place her $800 or $900 in a joint savings account with his money. The complaining witness agreed. The next day she withdrew $820 from her account which she had earned as a waitress. She handed it to defendant and he said he would go and deposit it to a joint account and that "together we have $1800." He bought her a wrist watch and gave it to her. It appears defendant had only $170.27 deposited in his bank account. Although there is some evidence that defendant obtained a blank form of joint account it was never left with the bank and no such an account was opened. The complaining witness believed defendant had opened such an account. A few days thereafter defendant left for Las Vegas, Nevada. The next day he telephoned "Skeetz" and said he had had an automobile accident there and asked her to wire him $50. She did so and took an airplane to meet him. He met her and there was no apparent damage to the car. They proceeded to see the sights at Las Vegas. Defendant gambled and lost. He had the complaining witness cash checks and give him the proceeds. He promised when they returned to San Diego he

would withdraw the money from the joint account in San Diego and cover the checks. He was unable to do so. He told her he had already withdrawn it and lost it before she arrived. On October 1st, the complaining witness borrowed money and deposited it to cover the checks drawn by her. Defendant remained in her home until October 9th. On that day he took her to work and agreed to pick her up. He failed to do so. When she returned home that night her High Fidelity Player, portable typewriter, $50 in cash, and her wrist watch, all being her property obtained before her purported marriage, were missing. She never gave defendant permission to take them. He immediately pawned them and left for Denver, Colorado, where he was later apprehended.

Defendant testified about the claimed marriage and said the next day the complaining witness went to the bank and came out with $600; that she gave him $300; that prior to this he told her he was going to open a joint account with her; that the next day he did apply to the bank for a form to open such an account and put the signature card and blank form in the glove compartment of the car; that that same night the complaining witness signed the card; that some family disagreement arose and he withdrew the money on September 27th, gave the complaining witness all but $75, and left for Las Vegas, where he lost it in gambling; and that the complaining witness suggested he sell the personal property mentioned so he could go to Denver to find work.

There was considerable evidence that defendant, on September 22d, had a large roll of bills exhibiting it to a former girl friend who requested payment of $200 which he owed her, and that he informed her he was being backed financially by a friend to go into some business.

In contrast to the prosecution's claim that defendant married the complaining witness for the purpose of defrauding her of her money and personal property, it is defendant's argument that she gave it to him to be used for a purpose for which they both consented; that the marriage was entered into on his part with a bona fide intention to live with the complaining witness and that he left for Colorado for the express purpose of finding a new home for himself and her, and to remove himself from living conditions which they both found intolerable. He did produce evidence that he sent the complaining witness a railway ticket to go to Denver but she refused it. Objections made on this appeal are numerous and do not go directly to the question of the sufficiency of the

evidence. Defendant argues that the prosecution "overtried" the case, inflamed the minds of the jurors against the defendant on immaterial points, particularly relating to the possible illegal marriage; that the trial judge allowed unrestricted cross-examination of defendant in the form of a "fishing expedition," and that he actively assisted the prosecutor in the advocacy of defendant's guilt; that he refused to give certain requested instructions in reference to defendant's present marital status; and claims that the motion for a new trial should have been granted.

▉ The main complaint involves the cross-examination of defendant after he testified he was divorced from his former wife at the time he claims he married the complaining witness in Mexico. He was asked if he did not later marry a woman by the name of Naomi in Arkansas in 1952. He admitted he did but said she told him she obtained a Mexican divorce and remarried, although no papers were ever served on him. He admitted that he was living with her in San Diego in January, 1956, and that she was afraid her previous divorce was illegal because she married defendant before the final decree was entered. This evidence was admitted over strenuous objections and the trial court allowed it to remain, principally upon the ground that it bore on the intent of defendant to defraud the complaining witness of her money at the time he purportedly married her. Out of the presence of the jury the prosecution informed the court it had telephoned to Naomi in Kansas and she told him she never had obtained a divorce from defendant. The testimony of defendant on cross-examination was admissible for the limited purpose indicated by the trial court and no prejudicial error appears (*People* v. *Zerillo,* 36 Cal.2d 222, 228 [223 P.2d 223]; *People* v. *Tarantino,* 45 Cal.2d 590, 599 [290 P.2d 505].)

▉ Other such evidence involved a claimed family argument concerning the alleged pregnancy of the daughter of the complaining witness and the necessity and expense of an abortion. It does show some financial transactions which might have involved some of the funds of the complaining witness. Defendant presented evidence on the subject matter and it was competent for the prosecution to rebut that evidence.

The ultimate question here involved was whether the complaining witness's money, in excess of $200, was turned over to defendant by reason of false representations and pretenses of the defendant. Although conflicting, the evidence fully

288

supports the finding of the jury. It was fully and fairly instructed on the subject matter and we find no instructions, given or refused, which would prejudice defendant's rights in this respect. This same conclusion must be reached as to the evidence pertaining to the second count. It therefore becomes unnecessary to answer, in detail, all the claimed errors argued in the brief and raised on the motion for new trial.

Judgment and order denying a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.